**Lucila ALARCON; Raoul Hernandez, on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,**

v.

**KELLER INDUSTRIES, INC., Defendant–Appellee.**

**No. 92–17045.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 18, 1994.

Decided June 17, 1994.

---

* This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34–4.

David A. Rosenfeld, Van Bourg, Weinberg, Roger & Rosenfeld, San Francisco, CA, for plaintiffs-appellants.

Linda M. Inscoe, Latham & Watkins, San Francisco, CA, for defendant-appellee.

Before: D.W. NELSON, BOOCHEVER, and BEEZER, Circuit Judges.

Opinion by Judge BOOCHEVER.

BOOCHEVER, Circuit Judge:

Workers at Keller Industries' lawn furniture manufacturing plant in Merced, California brought this action against Keller when the plant was closed and they were given only one day of notice of the closure. The workers claimed that the one-day notice did not satisfy the requirements of the Worker Adjustment and Retraining Notification Act. The district court, on cross-motions for sum-

mary judgment, granted summary judgment in favor of Keller. This appeal presents only one issue for review: Was Keller's brief statement of reasons for the shortened notice period adequate? We conclude that it was, and affirm.

## BACKGROUND

Funding for Keller's operations, including its outdoor aluminum lawn furniture division ("the Division"), was provided by Continental Bank, which had a lien on Keller's assets. In 1990, after the Division lost money for several years, Keller attempted to find buyers for the Division at Continental's insistence. It also attempted to increase its number of retail accounts to improve business. Both efforts were unsuccessful at that time.

In July of 1991, however, Keller met with a potential buyer and began negotiations for the sale of the Division. Prior to the completion of the negotiations, on July 22, 1991, Continental notified Keller that it would no longer provide financing for the Division. The withdrawal of the funding necessitated the immediate closure of Keller's three outdoor aluminum lawn furniture manufacturing plants, including the Merced plant where plaintiffs worked.

The workers were notified on July 25, 1991 that their jobs were terminated, effective the next day. Keller believed any earlier announcement of the closures might jeopardize its ongoing efforts to obtain new business and to find new financing, as well as its efforts to negotiate the sale.

Keller sent a letter to the workers' bargaining representative giving notice of the closure. The letter stated in pertinent part:

The operating performance of the furniture division has been disappointing and the substandard working capital required of business does not make it a viable entity.

In an attempt to save the jobs of the Furniture Division employees, Keller pursued several options for possible purchase, but was unable to secure a qualified buyer. Further, Keller was unable to find parties interested in supplying the enormous

working capital for such a high risk and under performing business. . . .

Please consider this letter to be your official notice as required by the federal plant closing law, and specifically, by 2102 Section 3(b)(1) of the Worker Adjustment and Retraining Notification Act of 1988.

Lucila Alarcon, Raoul Hernandez and other employees similarly situated ("Alarcon") sued Keller, alleging that the company violated the Worker Adjustment and Retraining Notification Act (the "WARN Act" or the "Act"), 29 U.S.C. §§ 2101–2109 (West Supp. 1994). Alarcon claimed that Keller's brief statement of reasons for the reduced notification period was inaccurate and misleading because it did not state that the immediate closure was caused by Continental's decision to terminate the Division's financing, and because it led workers to believe that there was no possibility of any sale of the company.

The district court granted summary judgment in Keller's favor, finding that the statement satisfied the requirements of the WARN Act. We review a grant of summary judgment de novo. *Jones v. Union Pac. R. Co.*, 968 F.2d 937, 940 (9th Cir.1992).

## DISCUSSION

### I. *Statutory Requirements*

The purpose of the WARN Act is to ensure that workers receive advance notice of plant closures and mass layoffs that affect their jobs. 20 C.F.R. § 639.1(a) (1993). This provides workers with time to adjust to their loss of employment, to seek and obtain alternative jobs, and where necessary, to seek retraining to allow successful competition in the job market. *Id.* The Act thus requires, with some exceptions, that a covered employer give affected workers sixty days written notice of a plant closure or mass layoff. *See* 29 U.S.C. § 2102(a).

Two of the exceptions to the sixty day notice requirement are the "faltering company" exception, 29 U.S.C. § 2102(b)(1), and the "unforeseeable business circumstances" exception, 29 U.S.C. § 2102(b)(2)(A). These exceptions allow covered employers to give less than sixty days notice under certain circumstances. When the notice period is

shortened pursuant to one of these exceptions, the employer must give as much notice as is practicable, and "at the time notice actually is given, [the employer must] provide a brief statement of the reason for reducing the notice period, in addition to the other elements [of proper notice] set out in § 639.7." 20 C.F.R. § 639.9. *See also* 29 U.S.C. § 2102(b)(3) (statement must give the "basis" for reducing the notification period).

Alarcon stipulated that both the faltering company and the unforeseeable business circumstances exception applied in the case of the sudden closure of Keller's Merced plant, and conceded that the notice was given as soon as was practicable. We are thus not confronted with what we believe will often be a difficult decision whether there was adequate cause for shortening the notice period. The only question before us is whether Keller's letter notifying workers of the plant closure contained an adequate "brief statement" of the reasons for the shortened notice period.

■ What the brief statement of reasons must contain in order to be adequate appears to be a question of first impression. When considering the meaning of a statute, "[o]ur goal ... is to ascertain the intent of Congress in order to give effect to its legislative will." *FDIC v. McSweeney*, 976 F.2d 532, 537 (9th Cir.1992), *cert. denied,* ─ U.S. ─, 113 S.Ct. 2440, 124 L.Ed.2d 658 (1993). We look first to the plain language of the statute, construing the provisions of the entire law, including its object and policy, to ascertain the intent of Congress. *McSweeney*, 976 F.2d at 537. Then, if the language of the statute is unclear, we look to its legislative history. *United States v. Derr*, 968 F.2d 943, 945 (9th Cir.1992). We will also consider the interpretation of the statute contained in the regulating agency's regulations, so long as it is based on a permissible construction of the statute. *National Medical Ents., Inc. v. Sullivan*, 960 F.2d 866, 868 (9th Cir.1992).

Neither the WARN Act, its legislative history, nor its regulations specify what the brief statement must contain. *See* 29 U.S.C. § 2102(b)(3); 20 C.F.R. § 639.9. The plain language of the statute indicates only that the statement should be "brief," and that it should state the "basis" for the shortened notice period. 29 U.S.C. § 2102(b)(3).

In addition, it is difficult to ascertain Congress' legislative purpose in requiring the brief statement from either the language of the statute or its legislative history. Considering the purpose of the Act in its entirety, however, we conclude that Congress' purpose in requiring a brief statement must have been to provide employees with information that would assist them in determining whether the notice period was properly shortened.

■ We consider the necessary contents of the brief statement in light of this legislative purpose by again considering the language of the statute, and, as necessary, the legislative history. The statute requires the employer to state the "basis" of the shortened notice period. A statement of the "basis" of something sets out the "underlying condition or state of affairs." Webster's 9th New Collegiate Dictionary 134 (1984). And, a conference committee report from an earlier version of the Act declares that the statement should "explain[ ] why earlier notice [was] not ... given." H.R.Rep. No. 576, 100th Cong., 2d Sess. (1988), *reprinted in* 1988 U.S.C.C.A.N. 1547, 2083.[1] To explain something means "to make [it] plain or understandable." Webster's 9th New Collegiate Dictionary 437. Accordingly, a company's statement of its basis for a shortened notice period should set forth the underlying factual events which led to the shortened period, thereby allowing workers to understand the employer's situation and its reasons for shortening the notice period.

Further, the facts as set forth must be reasonably specific. The regulations state that section 2102(b)(3) requires the brief statement of reasons "*in addition to* the other elements" of notice. 20 C.F.R. § 639.9 (emphasis added). This suggests that the "brief statement" is an additional element of "notice" under the Act. As such, it is subject to the requirement that "[a]ll notice must be

---

1. *Congress indicated that this report from a predecessor bill to the WARN Act should be treated* as the legislative history to accompany the Act. 1988 U.S.C.C.A.N. 1547.

specific," *id.* at § 639.7(a)(1), and based on the "best information available." *Id.* at § 639.7(a)(4).

◼ Thus, although the statement may be brief, it is not enough for an employer simply to cite a statutory exception, stating, for example, "the notice is short because we are a faltering company." Such a statement provides no understanding of the underlying condition or state of affairs causing the shortened notice, and it lacks any semblance of specificity or detail. Instead, the company must give some indication of the factual circumstances that made an exception to the statutory notice requirement applicable, providing an adequate, specific explanation to affected workers.

## II. *Adequacy of Keller's Statement*

We consider Keller's statement to the workers in light of our holding that the WARN Act calls for a brief statement setting forth the events underlying the sudden closure or mass layoff, and providing workers with an explanation for the shortened notice period. This case presents an unusual situation because the parties have stipulated that there were two causes of the shortened notice: the company was faltering, and an unforeseeable business circumstance occurred. In the ordinary case, only one event is the actual cause of the shortening of the notice period. *Cf. Carpenters Dist. Council v. Dillard Dept. Stores*, 15 F.3d 1275, 1281 (5th Cir.1994) (actual cause of reduction in workforce was merger with another company despite presence of faltering company circumstances at time of merger, so exception does not apply), *petition for cert. filed*, 62 U.S.L.W. 3089 (U.S. May 20, 1994) (No. 93–1857). Here, however, the parties agreed that Keller had two bases for shortening the notice period.

### A. Adequate Reference to Underlying Facts

◼ Keller's brief statement set forth the underlying factual circumstances of its position as a faltering company, satisfying the Act's requirement that it state the "basis" of the shortened notice period. The faltering company exception states:

An employer may order the shutdown of a single site of employment before the conclusion of the 60–day period if as of the time that notice would have been required the employer was actively seeking capital or business which, if obtained, would have enabled the employer to avoid or postpone the shutdown and the employer reasonably and in good faith believed that giving the notice required would have precluded the employer from obtaining the needed capital or business.

29 U.S.C. § 2102(b)(1). Keller's letter stated that the performance of the Division was disappointing, that the working capital required did not make it a viable entity, and that the company had unsuccessfully pursued several options for purchase. It also stated that it could find no one interested in supplying the necessary working capital to keep the company operational. In addition, Keller specifically cited the faltering company exception, found at section 3(b)(1) of the WARN Act, codified at 29 U.S.C. § 2102(b)(1). The cumulative effect of this information was to provide a sufficiently specific statement of the basis for the shortened notice period. The workers would have understood from this statement that they had not been told of the closure sooner because the Division was struggling and Keller had been attempting to prevent the plant's closure. And, while reference to the statute alone would not have constituted a sufficient brief statement, reference to the statute in combination with this information would have shown workers that the company believed that giving earlier notice would have "precluded [the employer] from obtaining the needed capital or business." 29 U.S.C. § 1202(b)(1).

Whether Keller's notice also clearly stated the alternative basis for the shortened notice, the unforeseeable business circumstance of Continental's termination of the Division's funding, is questionable. That exception states: "An employer may order a plant closing ... before the conclusion of the 60–day period if the closing ... is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required." 29 U.S.C. § 2102(b)(2)(A).

Keller's statement set forth the precarious financial condition of the business, including its "substandard working capital" and its inability to find a qualified buyer. It then stated: "Further, Keller was unable to find parties interested in supplying the enormous working capital for such a high risk and underperforming business." This statement referred not only to Keller's search for new financing, but also, albeit indirectly, to Continental's decision to terminate the Division's financing.

Continental's notification to Keller, informing Keller that it would no longer provide any financing to the Division, stated:

> This letter summarizes our discussion earlier today, regarding your desire to continue operating Keller's lawn furniture business and request that Continental Bank provide *working capital* for the furniture operation for fiscal 1992, estimated to be $20–25 million.... I am formally notifying you by this letter that Continental Bank is *not willing to provide working capital* or other ongoing requirements of the furniture division.

(emphasis added). Continental's letter thus refers to its decision to terminate financing as a decision no longer to provide "working capital." Keller's statement to plaintiffs paralleled this language, both when it referred to its "substandard working capital," and when it discussed its inability to find a party willing to provide working capital. The statement therefore set out the underlying circumstances leading to the closure without sixty days notice: Keller's inability to find parties willing to provide further working capital. Workers would have understood from this statement that the Division had no money to operate the Division during a sixty day notice period.

It is questionable, however, whether the statement adequately indicated that the lack of working capital was a result of an unforeseeable event which prevented the company from providing workers with the full sixty days notice. Keller could easily have provided a more specific statement, obviating the need for this lawsuit, by stating: "the notice is short because our bank has unexpectedly notified us that it will no longer provide working capital for the Division as of this date and we can find no other party interested in providing such capital." Because the notice does not clearly explain how the circumstances caused the notice period to be shortened, we would have difficulty affirming the decision of the district court were the unforeseeable business circumstances exception the sole reason for the shortened notice period.

We need not decide whether it was sufficient to set out the underlying factual circumstances with little indication of how these circumstances led to the shortened notice period, however, because of our finding that the statement adequately explained that the notice was shortened because Keller was a faltering company. The purpose of the brief statement is to help the workers to discover whether their employer properly could shorten the notice period. If an adequate explanation of the circumstances of one cause of the shortened notice period is given, the employer is not required to continue on with other explanations. An employer omits vital information at its peril, however, for if the stated basis is later determined not to have been the cause of the shortened notice, the brief statement for the other basis may be inadequate.

Here, because Keller's notice adequately stated the basis of its shortened notice as a faltering company, we need not also decide whether the statement was adequate with respect to the other cause of the shortened notice period. The statement, as a whole, adequately stated a basis for the shortened notice. .

### B. False or Misleading Statement

■ Alarcon also argues that Keller's notice was inadequate because it was false and misleading. We disagree.

Alarcon alleges that Keller's citation of the faltering company exception and recitation of facts supporting the applicability of that exception was misleading because it led employees to believe something other than Continental's termination of the Division's financing was the reason for the short notice. Alarcon herself, however, stipulated that in addition to the unforeseeable business circumstances exception, the faltering company exception applied. We thus will not find here that its citation was false or misleading.

Alarcon also argues that the statement was false and misleading because it suggested that Keller had no prospect of selling the Division, when it was in fact engaged in negotiations for the company's sale. The letter stated that Keller "was unable to secure a qualified buyer." This was true; Keller had made an extensive, yet unsuccessful, search for a qualified buyer. At the date of the closure, the new negotiations for the sale had just begun and there was no guarantee of success. Alarcon points to nothing in the WARN Act that indicates that an employer must inform workers of the possibility that a closed plant might be sold and thus reopen.

## CONCLUSION

The statement of reasons provided by Keller adequately explained the factual circumstances underlying the plant closure and the shortening of the statutory notice period due to the company's status as a faltering company. In addition, Keller's statement, although not commendably clear, was not false or misleading. The district court did not err in granting summary judgment in favor of Keller Industries.

The judgment of the district court is AFFIRMED.