**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Marky Onge TERRENCE,
Defendant–Appellee.**

No. 97–10116.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 7, 1997.

Decided Dec. 30, 1997.

Frederick A. Black and Marivic P. David, Assistant United States Attorney, Agana, Guam, for plaintiff-appellant.

Peter C. Wolff, Jr. and Eric E. Butterfield, Assistant Federal Public Defender, Mongmong, Guam, for defendant-appellee.

Before: REINHARDT, LEAVY, and THOMAS, Circuit Judges.

REINHARDT, Circuit Judge:

The government appeals the dismissal of the indictment against defendant Marky Onge Terrence for illegal re-entry as a deported alien in violation of 8 U.S.C. § 1326(a). The district court held that the Compact of Free Association (Compact) between the United States and Palau, 48 U.S.C. § 1931, exempts Palauans from complying with the provisions of § 1326(a) and thus renders Terrence immune from prosecution under that section. We disagree. The plain language of the Compact makes it clear that it affords no such exemption or immunity. Accordingly, we reverse and order that the indictment be reinstated.

## I.

Terrence, a citizen of Palau, was admitted to Guam as a non-immigrant student in 1986. In 1989, he was convicted in the Superior Court of Guam of multiple felonies, including burglary, theft, and felony escape, and sentenced to four years in prison. Based on the burglary conviction, he was deported to Palau. In 1994 and early 1995, he applied for permission to re-enter the United States; his application was denied both times. He nonetheless re-entered Guam in May 1995 and October 1995.[1] He did so without obtaining the permission of the Attorney General.

---

1. As a territory, Guam is considered a part of the United States for purposes of the immigration laws.

Terrence was arrested in Guam and was charged with two counts of re-entry without the Attorney General's permission, in violation of 8 U.S.C. § 1326(a). Section 1326(a) provides that "any alien who has been ... deported" must obtain permission from the Attorney General before re-entering the United States. Failure to obtain such permission prior to re-entry constitutes a felony.[2] Terrence moved to dismiss the indictment on the ground that Title I, Article IV, § 141(a) of the Compact allows any citizen of Palau to enter the United States for employment purposes without the Attorney General's permission, even after a prior deportation.

The Compact governs the relationship of "free association" between the United States and Palau, one of the four governments comprising the Trust Territory of the Pacific Islands. S.Rep. No. 99–403, at 1 (1986), reprinted in 1986 U.S.C.C.A.N. 6207. It was adopted by the United States Congress on November 14, 1986, and accepted by the Republic of Palau's voters on November 9, 1993. The Compact provides a grant aid package for Palau, military defense privileges for the United States, and special immigration privileges for citizens of each. Article IV § 141(a), which regulates immigration, states that citizens of Palau:

> may enter into, lawfully engage in occupations, and establish residence as a nonimmigrant in the United States and its territories and possessions without regard to paragraphs (14), (20), and (26) of section 212(a) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(14), (20), and (26).

Section 141(a) also provides that Palauans "shall be considered to have the permission of the Attorney General ... to accept employment in the United States."

Title 8 U.S.C. § 1182(a) sets forth certain prohibitions against entry into the United States. Subsections (14), (20), and (26) of § 1182(a), now recodified as § 1182(a)(5), (7)(A), and (7)(B), prohibit entry by persons seeking to perform certain forms of employment, unless they have obtained the necessary labor certifications, and by persons who are not in possession of required visas, passports, or other entry documents. It is the prohibitions contained in these subsections that are waived for Palauans by Compact § 141(a). The effect of the waiver is that Palauans need not obtain visas, passports, or other immigration papers and may enter for the purpose of performing certain types of employment without having to obtain the work certifications required of other aliens. Aside from § 141(a)'s provision exempting Palauans from the scope of the three specified subsections of § 1182(a) and aside from § 141(a)'s other provision declaring that Palauans are deemed to have the Attorney General's permission to accept employment, the Compact does not waive or otherwise mention the requirements of any other subsections of § 1182(a) or of any other immigration laws, including those that exclude aliens who have previously been deported. Specifically, the Compact does not waive or otherwise mention § 1326(a) or § 1182(a) subsections (16) and (17).

The defendant argues that the Compact afforded him, as a Palauan citizen, the unconditional right to enter the United States to accept employment, and that, unlike other previously deported aliens, he was not required to obtain consent from the Attorney General in order to re-enter. In short, the defendant contends generally that, as a Palauan, he is exempted by the Compact from immigration laws, at least if he intends to

**2.** The version of § 1326(a) in effect at the time of Terrence's arrest and his subsequent indictment states:

(a) Subject to subsection (b) of this section, any alien who-
(1) has been arrested and deported or excluded and deported, and thereafter
(2) enters, attempts to enter, or is at any time found in, the United States, unless
(A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or
(B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,
shall be fined under Title 18, or imprisoned not more than 2 years, or both.
8 U.S.C.A. § 1326(a) (West 1996).

obtain employment upon entry, and, specifically, that under the Compact he need not obtain the permission of the Attorney General to re-enter after being deported.

The district court agreed with Terrence's conclusion as to the effect of Compact § 141(a), although it relied on a somewhat different rationale than the defendant. In interpreting the Compact, the district court concluded that the "first sentence" of § 141(a) should be read separately:

> The first sentence of the statute allows all Palauans into the U.S. and Guam, regardless of what grounds would otherwise exclude them. The second clause of the statute then states that even if the alien were excludable under (14), (20) or (26), the alien may be allowed to enter. By the initial language of the statute, **all** Palauans are permitted entry under this statute ...

Based on this construction of the Compact and on certain legislative history, the court granted Terrence's motion to dismiss the indictment.

### II.

■■■ ▪ In interpreting the Compact, as in interpreting a statute, we first look to its plain language. *Cf. Alarcon v. Keller Indus., Inc.*, 27 F.3d 386, 389 (9th Cir.1994). The government contends that Palauans must generally comply with immigration laws and that Compact § 141 exempts those seeking entry or re-entry only from subsections (14), (20), and (26) of 8 U.S.C. § 1182. Specifically, the government contends, the Compact does not waive the requirements of the other provisions of the immigration laws, and in particular does not waive the provisions of subsections (16) and (17) of § 1182(a) or the provisions of § 1326(a), the section Terrence was convicted of violating.[3] We agree with the government that the language of the Compact is plain, that with respect to the right of Palauans to enter the United States, it exempts them from only the three specifically enumerated subsections, and that it

does not provide an exemption for Palauans who have previously been deported from the United States from the statutory provisions prohibiting re-entry without the permission of the Attorney General. Simply put, the Compact provides that Palauans may enter the United States "without regard to paragraphs (14), (20), and (26)." Palauans previously deported and therefore required by both § 1182(a)(16) or (17) and § 1326(a) to obtain the permission of the Attorney General prior to re-entering the United States still must obtain that consent. Nothing in the Compact purports to waive the approval requirement.

■■■ The district court's conclusion that the Compact permits *all* Palauans to enter without obtaining the prior consent of the Attorney General is inconsistent with the fact that Compact § 141 specifically waives the requirements of three subsections only. Under the doctrine of *"inclusio unius est exclusio alterius"* (the inclusion of one is the exclusion of the other), "[w]hen a statute limits a thing to be done in a particular mode, it includes a negative of any other mode." *Longview Fibre Co. v. Rasmussen,* 980 F.2d 1307, 1312 (9th Cir.1992) (citation omitted). Because Section 141(a) specifies only three subsections of § 1182(a) from which Palauans are exempted, the requirements of all other provisions of immigration law remain applicable. Nothing in the Compact relieves Terrence, who falls under two subsections of § 1182(a), as well as under § 1326(a), of the obligation to comply with the statutory requirement that he obtain the consent of the Attorney General before re-entering the United States.

The three subsections of § 1182 that the Compact waives for Palauans pertain to paperwork requirements and employment restrictions. The thrust of these sections is altogether different from that of the provisions that exclude persons because of criminal conduct or immoral activity, or because of a prior deportation on account of a conviction or arrest. Just as Compact § 141 does not

---

**3.** Section 1326(a) and § 1182(a)(16) and (17) overlap to some extent. The latter subsections declare that aliens who have been deported are ineligible for re-entry without the consent of the Attorney General. Section § 1326(a) also ex-

cludes aliens who have been deported and who have not obtained the Attorney General's permission to re-enter, but, in addition, the section *makes it a felony* to re-enter after deportation without such consent.

mention § 1182(a)(16) and (17) or § 1326(a), it also fails to mention any of the subsections of § 1182 that exclude applicants for criminal activity, (9)-(12), for immoral conduct, (13), or for prior efforts to enter the United States by fraud, (19). There is simply no logic to the claim that the Compact's waiver of documentation and work requirements for Palauans implies a broad waiver of all other exclusion provisions, including those designed to exclude persons who have previously been deported or have engaged in criminal conduct.

To the extent that Terrence relies upon the provision of § 141 that exempts Palauans from obtaining employment authorization from the Attorney General, he misapprehends its meaning. The language is clear. It states that Palauans need not obtain the Attorney General's permission prior to obtaining *employment* in the United States. The provision offers no support for Terrence's theory that he need not obtain permission from the Attorney General before *reentering* the country after having been deported.[4]

The Compact's plain language leaves no question that Congress did not intend to provide an exemption, for Palauans, from the statutory provisions requiring aliens who have previously been deported to obtain the Attorney General's permission prior to re-entry. We thus need not inquire into the Compact's legislative history.[5] We REVERSE the dismissal of the indictment against Terrence and REMAND with instructions that the indictment be reinstated.

---

**4.** The provision on which Terrence relies waives, for Palauans, the requirement that aliens seeking employment in the United States must obtain employment authorization or work visas from the Immigration and Naturalization Service, the agency which administers and enforces immigration policy under the direction of the Attorney General. For examples of the statutes requiring that aliens, prior to entering the United States, obtain the Attorney General's consent in the form of visas and work authorization see 8 U.S.C. § 1153 (specifying the number of immigrants that will be granted visas enabling them to work in the United States under various categories of employment); 8 U.S.C. § 1184 (specifying the types of authorization and visas that non-immigrants must obtain from the Attorney General prior seeking employment in the United States); 8 U.S.C. § 1158 (announcing that asylum applicants are not entitled to employment authoriza-

tion except by specific grant of the Attorney General); and 8 U.S.C. § 1160 (announcing that the Attorney General shall grant work authorizations for agricultural laborers or make changes in aliens' immigration status to allow them to work as an agricultural laborer).

**5.** We note, however, that while the district court cites H.R. Conf. Rep. No. 99–188, pt.2 at 20 (1985), *reprinted in* 1985 U.S.C.C.A.N. 2826, 2844–45, to support its holding, a report by the House Committee on Foreign Affairs, H.R. No. 99–188, pt.1 at 18 (1985), *reprinted in* 1985 U.S.C.C.A.N. 2746, 2763, reaches precisely the opposite conclusion. It states that Section 141 "effectively exempts [Palauan] citizens meeting specified criteria from certain United States passport, visa, and work permit requirements...." *Id.*