[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14673
_____

D.C. Docket No. 3:10-cv-00895-MEF-CSC

MYRA SIDES, etc., et al.,

Plaintiffs,

JUDY WEEKES-WALKER,
on behalf of herself and all others similarly situated,
MONA THOMAS,
on behalf of herself and all others similarly situated,
KEYLA EXFORD,
on behalf of herself and all others similarly situated,
RITCHIE L. STALNAKER,
on behalf of himself and all others similarly situated,

Plaintiffs - Appellees,

versus

MACON COUNTY GREYHOUND PARK, INC.,
a.k.a. Victoryland,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(August 5, 2013)

Before CARNES, Chief Judge, WILSON and EBEL,* Circuit Judges.

WILSON, Circuit Judge:

Macon County Greyhound Park, Inc. (MCGP) appeals the district court's grant of summary judgment for appellees, MCGP employees Judy Weekes-Walker, et. al (Weekes-Walker), on appellees' claims under the Worker Adjustment and Retraining Act of 1988 (WARN Act), 29 U.S.C. §§ 2101–2109, and as to MCGP's assertion of the unforeseeable business circumstances defense, 29 U.S.C. § 2102(b)(2)(A).  MCGP's former employees brought this class action suit pursuant to the WARN Act, alleging that in 2010, MCGP thrice violated the WARN Act's requirement that an employer provide employees 60-days' notice prior to a plant closing or mass layoff.  *See* 29 U.S.C. § 2102(a).  MCGP argued that it was not required to give notice to some of the laid off employees because those layoffs did not meet the statutory definition of a mass layoff or plant closing

_____

* Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting by designation.

2

under the WARN Act.  *See id.* §§ 2101(a)(2), (3).  MCGP also attempted to invoke

the WARN Act's unforeseeable business circumstances defense, contending that

its layoffs and closure could not have been foreseen.  *See id.* § 2102(b)(2)(A).  In

granting appellees' motion for summary judgment, the district court held that the

WARN Act applied to all three alleged violations, and that 29 U.S.C. § 2102(b)(3)

imposes a condition precedent such that an employer seeking to leverage the

unforeseeable business circumstances defense must first give notice under the

statute.  Accordingly, the court held that MCGP could not avail itself of the

unforeseeable business circumstances defense because it provided no such notice

to appellees.  After a thorough review of the record and briefs, and with the full

benefit of oral argument, we affirm in part, reverse in part, and remand.

## I.    Background

Known to many as Victoryland, MCGP was a former greyhound track

turned multi-million dollar casino in Alabama that hosted electronic gaming on its

premises.  It was this massive growth, fueled by electronic gaming, that marked the

start of MCGP's troubles.  In December 2008, then Governor Bob Riley issued an

executive order that authorized the creation of the Governor's Task Force on

Illegal Gambling.  The Task Force began cracking down on Alabama

3

establishments that offered electronic gaming.  These establishments subsequently entered into litigation with the Task Force.  In November 2009, the Supreme Court of Alabama invalidated a lower court's preliminary injunction against the Task Force, concluding that the gaming operators "failed to introduce substantial evidence from which the trial court reasonably could have concluded that [the game operators] had a 'reasonable likelihood of success' in proving that the electronic gaming machines seized . . . constituted the game of bingo."  *Barber v. Cornerstone Cmty. Outreach, Inc.*, 42 So. 3d 65, 86 (Ala. 2009).

The present case arises from a series of terminations that MCGP conducted throughout 2010 as the result of the Task Force's crackdown on electronic gaming.  MCGP is a "single site of employment" under the WARN Act.  20 C.F.R. § 639.3(i); *see also Int'l Union, United Mine Workers v. Jim Walter Res., Inc.*, 6 F.3d 722, 724–27 (11th Cir. 1993) (defining a single site of employment under 20 C.F.R. § 639.3(i)).  The WARN Act was created in part so that employers would be statutorily required to provide adequate notice of future layoffs to all employees before ordering a mass layoff or plant closing.  Specifically, "[a]n employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order."  29 U.S.C. § 2102(a); *see also Int'l Union*, 6 F.3d at 724.

4

On January 5, 2010, MCGP laid off 68 employees due to scheduled renovations. MCGP portrayed this layoff as temporary in nature and concedes that it did not provide WARN Act notice to these employees. Approximately one month later, the Supreme Court of Alabama denied rehearing in *Cornerstone* and that same day, the Task Force arrived at Victoryland to seize MCGP's electronic gaming machines. MCGP immediately filed a same-day complaint against the Task Force in the Circuit Court of Macon County, which entered a temporary restraining order against the Task Force. *See Tyson v. Macon Cnty. Greyhound Park, Inc.*, 43 So. 3d 587, 589 (Ala. 2010) (per curiam). On February, 4, 2010, however, the Supreme Court of Alabama vacated the circuit court's order and held that Alabama courts lacked subject matter jurisdiction to enjoin criminal prosecutions and investigations. *Id.* at 591.

Undoubtedly impelled by the Supreme Court's dissolution of the temporary restraining order against the Task Force, MCGP laid off all remaining employees on February 4, 2010. Once again, MCGP did not provide any formal notice under the WARN Act to affected employees. MCGP subsequently held a meeting with its employees to discuss unemployment issues. MCGP also posted on both its website and on interstate billboards that it had closed as a result of the Task Force's activities. There was no mention of the WARN Act in any of these post-layoff communications, nor any listed reason for not complying with the WARN

5

Act's 60-day notice requirement. Then, on March 5, 2010, litigation resumed when Macon County officials and citizens filed a lawsuit in Macon County Circuit Court, arguing that the Task Force lacked authority to conduct investigations and prosecute in Macon County. *See Tyson v. Jones*, 60 So. 3d 831, 837 (Ala. 2010). Down to short strokes, MCGP appeared prepared for a favorable ruling. On March 5, 2010, the Macon County Circuit Court entered a second temporary restraining order against the Task Force, and MCGP almost immediately re-opened for business. The circuit court subsequently transformed the restraining order into a preliminary injunction against the Task Force. On July 30, 2010, the Supreme Court of Alabama reversed the circuit court and abrogated the injunction against the Task Force. *Id.* at 852. MCGP found itself bracing for a raid once more. On August 9, 2010, MCGP, in anticipation of a looming Task Force raid, permanently closed its doors on electronic gaming. As with the January and February layoffs, MCGP did not provide any formal WARN Act notice to affected employees.

In October 2010, the present litigation began when appellees filed a complaint in the district court alleging that MCGP violated the WARN Act when it failed to provide WARN Act notice of the layoffs. The court certified the case as a Federal Rule of Civil Procedure 23(b)(3) class action. The district court divided the plaintiffs into three sub-classes based on their termination dates (January, February, or August 2010). The district court then granted summary judgment for

6

appellees on liability for all three alleged WARN Act incidents after aggregating the January and February layoffs as a mass layoff and determining that the August closure was a plant closing. MCGP now appeals.

On appeal, MCGP argues that the district court erred in aggregating the January and February layoffs. MCGP contends that the January layoff was not covered by the WARN Act and that the February and August layoffs or plant closings are subject to the WARN Act's unforeseeable business circumstances defense.

## II.    WARN Act Violations

"We review *de novo* a district court's grant of summary judgment, applying the same legal standards as the district court." *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000). Summary judgment is proper "if the evidence before the court shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995) (internal quotation marks omitted). The WARN Act was intended to enable employees "to adjust to the prospective loss of employment, to seek and obtain alternative jobs and . . . to enter skill training or retraining that will allow these workers to successfully compete in the job market." 20 C.F.R. § 639.1(a). At its core, the WARN Act was designed to give employees fair notice of their impending layoff.

7

A valid WARN Act claim requires the presence of the following three elements: "(1) a mass layoff [or plant closing as defined by the statute] conducted by (2) an employer who fired employees (3) who, pursuant to WARN, are entitled notice." *Allen v. Sybase, Inc.*, 468 F.3d 642, 654 (10th Cir. 2006). In this case, MCGP's argument hinges on whether the three incidents (January, February and August), individually or aggregated, can be classified as a plant closing or mass layoff under the WARN Act.

A *plant closing* under the WARN Act is

the permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site of employment, if the shutdown results in an employment loss at the single site of employment during any 30-day period for 50 or more employees excluding any part-time employees [.]

29 U.S.C. § 2101(a)(2). A *mass layoff* is

a reduction in force which . . . (A) is not the result of a plant closing; and (B) results in an employment loss at the single site of employment during any 30-day period for . . . (i)(I) at least 33 percent of the employees (excluding any part-time employees); and (II) at least 50 employees (excluding any part-time employees); or (ii) at least 500 employees (excluding any part-time employees)[.]

*Id.* § 2101(a)(3).

To determine who should receive notice, we look to 29 U.S.C. § 2102(a): "An employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order . . . to each *affected employee*." *Id.* § 2102(a)(1) (emphasis added). "Affected

8

employee[]" is defined to mean an employee "who may reasonably be expected to experience an *employment loss* as a consequence of a proposed plant closing or mass layoff by [his or her] employer." *Id.* § 2101(a)(5) (emphasis added). "[E]mployees" include "[w]orkers on temporary layoff or on leave who have a reasonable expectation of recall . . . ." 20 C.F.R. § 639.3(a)(1)(ii).  An "employment loss" means "(A) an employment termination, other than a discharge for cause, voluntary departure, or retirement, (B) a layoff exceeding 6 months, or (C) a reduction in hours of work of more than 50 percent during each month of any 6-month period."  29 U.S.C. § 2101(a)(6).

Our analysis begins with a plain language reading of the statutory text.  *See Harris v. Garner*, 216 F.3d 970, 972 (11th Cir. 2000) (en banc) ("[C]ourts should always begin the process of legislative interpretation . . . with the words of the statutory provision.").  Here, MCGP contends that the January layoff is not a covered event under the WARN Act and that the district court erred as a matter of law when it aggregated the January and February layoffs.  First, as the district court held and the parties conceded, the January 5, 2010 layoff was not, by itself, a covered incident under the WARN Act.  The February 4, 2010 layoff, however, was a plant closing where 249 employees suffered an employment loss at a single site of employment.  *See* 29 U.S.C. § 2101(a)(2).  Therefore, the district court concluded that "the January 2010 layoff [must] either [be aggregated with the

February plant closing as] a 'mass layoff' or [it is] not a covered event at all."
*Weekes-Walker v. Macon Cnty. Greyhound Park, Inc.*, 877 F. Supp. 2d 1192, 1200
(M.D. Ala. 2012).

We disagree. We find that the WARN Act does not permit the January
layoff to be aggregated with the February plant closing to qualify as either a plant
closing or mass layoff. Nonetheless, we think that under the statute, the employees
laid off in January could potentially be considered "affected employees" that were
entitled to notice of the February plant closing under the WARN Act. 29 U.S.C.
§ 2101(a)(5). Because we lack the factual record to make that determination, we
remand so that the district court can do so.

To begin, the district court erred by using the definition of "plant closing"
from 29 U.S.C. § 2101(a)(2) as an aggregation source or method. The district
court's opinion suggests that as long as the January layoff occurred within 30 days
of the February plant closing, then the two events can be aggregated together to
reach the threshold for a "plant closing." *Id.* § 2101(a)(2). But the language of the
"plant closing" definition itself does not allow for that sort of aggregation, because
"[p]lant closing" is defined as "the permanent or temporary shutdown of a single
site of employment . . . *if the shutdown* results in an employment loss at the single
site of employment during any 30-day period for 50 or more employees." *Id.*
(emphasis added). The phrase "during any 30-day period" is merely the timeframe

10

for determining whether enough employees were laid off in "the shutdown"—singular, not plural—in order for that shutdown to qualify as a plant closing under the WARN Act. *Id.* This language does not allow us to count an earlier and unrelated layoff as part of the same "plant closing" just because the two events happened within 30 days of one another.[1] *Id.* Nor can the January layoff and February plant closing be aggregated to constitute a "mass layoff." *Id.* § 2101(a)(3). A "mass layoff" is defined as "a reduction in force which . . . (A) *is not the result of a plant closing . . . ." Id.* (emphasis added). It is hence contrary to the plain language of the statute to aggregate the February plant closing with an unrelated layoff to create a "mass layoff." *Id.* Accordingly, the district court incorrectly aggregated the January layoff.

Therefore, and because the January layoff does not qualify as an independent WARN Act incident, the employees laid off in January will only have

---

[1] That the definition of "plant closing" does not permit this kind of aggregation is further evidenced by the existence of a separate aggregation rule in the WARN Act. 29 U.S.C. § 2101(a)(2). That aggregation rule provides that

> in determining whether a plant closing or mass layoff has occurred or will occur, employment losses for 2 or more groups at a single site of employment, each of which is less than the minimum number of employees specified in section 2101(a)(2) or (3) of this title but which in the aggregate exceed that minimum number, and which occur within any 90-day period shall be considered to be a plant closing or mass layoff unless the employer demonstrates that the employment losses are the result of separate and distinct actions and causes . . . .

*Id.* § 2102(d). Neither the parties nor the district court relied on that aggregation rule, likely because it is clear that the January and February employment losses were caused by "separate and distinct actions and causes." *Id.*

a colorable WARN Act claim if they were entitled to notice of the February plant closing. Whether they were entitled to notice in this case is in turn determined by how long the January layoff was expected to last. More specifically, whether MCGP is liable for the January layoff under the WARN Act depends on whether the January layoff was always intended to "exceed[] 6 months," or whether the February plant closing turned what was an otherwise "short-term layoff,"[2] 20 C.F.R. § 639.4, into an "employment loss." 29 U.S.C. § 2101(a)(6).

Although the record does reflect that the January layoff was expected to be "temporary in nature," *Weekes-Walker*, 877 F. Supp. 2d at 1197, it is unclear exactly how long the January layoff was anticipated to last. Perhaps the January layoff was not expected to last more than 6 months, but then the subsequent February closing caused those employees to suffer "a layoff exceeding 6 months." 29 U.S.C. § 2101(a)(6). In that case, the employees[3] would be "affected employees" entitled to notice under the WARN Act. *Id.* § 2101(a)(5). Or maybe the January layoff was always expected to last more than 6 months from the

---

[2] 20 C.F.R. § 639.4 details a similar, if not potentially applicable, circumstance:

> An employer who has previously announced and carried out a short-term layoff (6 months or less) which is being extended beyond 6 months due to business circumstances (including unforeseeable changes in price or cost) not reasonably foreseeable at the time of the initial layoff is required to give notice when it becomes reasonably foreseeable that the extension is required.

[3] Because the parties stipulated that the January layoff was intended to be temporary, and that those laid off in January had a reasonable expectation of being rehired, these individuals would still be considered employees after their initial layoff. *See* 20 C.F.R. § 639.3(a)(1)(ii).

12

January date, in which case the February event would not have caused those employees to suffer "a layoff exceeding 6 months." *Id.* § 2101(a)(6). Given this uncertainty as to how long the January layoff was in fact expected to last, and having set forth the correct legal framework, we remand to the district court to decide as a factual matter whether the January layoff was, from the beginning, expected to last more than six months, disentitling those employees to notice of the February plant closing.

Finally, the August 9, 2010 layoff was a plant closing under the WARN Act. Consequently, MCGP is liable for the February and August violations under the WARN Act, with the January layoff to be properly addressed by the district court on remand. Because the resolution of the proper classification of the employees laid off in January is not dispositive of the second issue on appeal, we proceed.

### III.    Unforeseeable Business Circumstances Defense

Acknowledging its WARN Act violations, MCGP next attempts to assert the statutory defense of an unforeseeable business circumstance in an effort to avoid liability. *See id.* § 2102(b)(2)(A). The limited issue on appeal is whether MCGP can invoke this defense without having given any notice to affected employees. We hold that they cannot.

Under the unforeseeable business circumstances defense, "[a]n employer may order a plant closing or mass layoff before the conclusion of the 60-day period

13

if the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required." *Id.* An employer averring this defense, however, "shall give as much notice as is practicable and at that time shall give a brief statement of the basis for reducing the notification period." *Id.* § 2102(b)(3). Notice under the WARN Act should be "specific" and include: (1) a statement regarding the temporary or permanent nature of the layoff; (2) the expected date of the mass layoff or plant closing; (3) information on "bumping rights"; and (4) the "name and telephone number of a company official to contact for further information." 20 C.F.R. §§ 639.7(a)(1), (d).

Again, our analysis begins with the statutory text. *See United States v. Gonzales*, 520 U.S. 1, 4, 117 S. Ct. 1032, 1034 (1997). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S. Ct. 843, 846 (1997). Where there is statutory ambiguity we defer to the interpretation of the WARN Act by the agency charged with its implementation, the Department of Labor (DOL). *See* 29 U.S.C. § 2107(a) (granting the DOL the ability to "prescribe such regulations as may be necessary to carry out [the WARN Act]"); *see also Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844, 104 S. Ct. 2778, 2782–83 (1984); *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662

F.3d 1292, 1299 (11th Cir. 2011) (explaining the court's deference to the DOL under *Chevron* when it exercises its authority).

Here, it is manifest that a WARN Act employer attempting to circumvent the 60-day notice requirement must still give *some* notice in accord with 29 U.S.C. § 2102(b)(3). The unforeseeable business circumstances defense does not jettison this absolute requirement under the WARN Act; even where the defense is properly invoked, *some* notice must be given. *See Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Dep't Stores, Inc.*, 15 F.3d 1275, 1282 n.11 (5th Cir. 1994) ("If an employer is providing less than sixty days notice pursuant to one of the statutory exemptions, the employer must provide a brief statement of the reasons for reducing the notice period." (internal quotation marks omitted)).

Our conclusion on this point is strengthened by 29 U.S.C. § 2102(b)'s title itself, which reads "[r]eduction of notification period." *See Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47, 128 S. Ct. 2326, 2336 (2008) (observing that although titles and section headings "cannot substitute for the operative text of the statute," they "are tools available for the resolution of a doubt about the meaning of a statute." (internal quotations marks omitted)). Had Congress desired to provide for the elimination of the notice requirement under 29 U.S.C. § 2102(b)(3), it would have indicated such by way of delineation between that and a reduction; it did not. Rather, Congress provided that an employer must

15

give "as much notice as is practicable," 29 U.S.C. § 2102(b)(3), which the DOL

has interpreted to include "*notice after the fact*."  20 C.F.R. § 639.9 (emphasis

added).  This reflects the DOL's acceptation that occasions may exist where it is

not practicable for an employer to provide notice prior to a mass layoff or plant

closing, and that in those circumstances, "practicable" may extend beyond the

actual date of the event.  29 U.S.C. § 2102(b)(3).  This lenience in the regulations

as to when notice may be given under 29 U.S.C. § 2102(b)(3) bankrupts MCGP's

argument.  Under the unforeseeable business circumstances defense, businesses

can obtain a *reduction* of the notification period allotted during unforeseeable

business circumstances, but not an elimination of the requirement.

Furthermore, the regulations separately list circumstances under which no

WARN Act notice is required.  *See id.* § 2102(b)(2)(B).  Not only are none of these

circumstances present in this case, but the existence of 29 U.S.C. § 2102(b)(2)(B)

bolsters our reading of 29 U.S.C. § 2102(b)(3), because if Congress had intended

to entirely eliminate the requirement for notice under the unforeseeable business

circumstances defense, a separate subparagraph listing no-notice-required

circumstances would be superfluous.

Finally, we note that the "and at that time shall give a brief statement of the

basis for reducing the notification period" language in 29 U.S.C. § 2102(b)(3)

should not be read in a vacuum.  "[A]t that time" implies a concrete point at which

16

the employer actually *gives* "notice."  *Id.* § 2102(b)(3).  Therefore, this second part of the unforeseeable business circumstances defense requirement cements our plain language reading of 29 U.S.C. § 2102(b)(3) that "as much notice as is practicable" is not an elimination of notice in its entirety.  Despite the statutorily prescribed requirement and ample opportunity do so, MCGP did not provide notice under the WARN Act to its affected employees.

MCGP contends that even if there is a notice requirement under 29 U.S.C. § 2102(b)(3), it need not be formal, because what was occurring at Victoryland was "entirely obvious" to affected employees and fulfilled the "spirit of the [A]ct." This argument fails.  It is inconceivable that MCGP's supposed "notice" in the form of billboard ads, third-party newspaper articles, internet postings and memoranda blaming the Governor for raids, satisfies the type of "brief statement of the basis for reducing the notification period" that Congress envisioned in drafting the WARN Act.  *Id.*  First, the regulations require that "[*a*]*ll* notice must be specific."  20 C.F.R. § 639.7(a)(1) (emphasis added).  The alleged notice provided by MCGP did not reference the WARN Act or provide any detailed information to affected employees.  *See id.* § 639.7(d).

Moreover, while the Governor's raid on Victoryland was highly publicized, MCGP cannot submit that each affected employee actually *received* notice.  *See id.* § 639.8 (stating that the delivery method must be designed to "ensure receipt").  In

17

fact, 20 C.F.R. § 639.8 goes so far as to outline specific methods of notice that are acceptable under the WARN Act, including, but not limited to, "insertion of notice into pay envelopes." *Id.* The district court thus correctly concluded that MCGP did not give any notice to affected employees regarding the February and August closings. *Weekes-Walker*, 877 F. Supp. 2d at 1207. As the district court aptly pointed out, Congress included the brief statement requirement not only to provide affected employees with notice of "the basis for reducing the notification period," 29 U.S.C. § 2102(b)(3), but also "to prohibit employers who have failed to provide the requisite 60-day notice from asserting litigation-convenient but factually *post hoc* justifications for their actions." *Weekes-Walker*, 877 F. Supp. 2d at 1207; *see also Alarcon v. Keller Indus., Inc.*, 27 F.3d 386, 389 (9th Cir. 1994) (finding that a formal notice statement may be brief, but must contain sufficient specificity and detail and give some indication of the factual circumstances that made the statutory exception applicable). MCGP's claimed methods of notice do not bear up to the fundamental requirement under 29 U.S.C. § 2102(b)(3) and 20 C.F.R. § 639.8 that an employer must give or serve a form of notice that will ensure delivery and receipt.

At bottom, "the broader context of the statute as a whole," in conjunction with a plain language interpretation of 29 U.S.C. § 2102(b)(3), reveals that WARN Act employers must give notice to affected employees *before* they can exercise the

18

unforeseeable business circumstances defense.  *Robinson*, 519 U.S. at 341, 117 S. Ct. at 846.  MCGP did not.

For the foregoing reasons, we affirm the district court's classification of the February and August layoffs as plant closings.  *See* 29 U.S.C. § 2101(a)(2).  We also affirm the district court's determination that MCGP was not entitled to invoke the unforeseeable business circumstances defense.  *See id.* § 2102(b)(2)(A).  We reverse in part and remand so that the district court can properly determine whether the employees that MCGP laid off in January were "affected employees" as a result of the February plant closing under the WARN Act, and were thus entitled to notice.  *Id.* § 2101(a)(5).

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

19