# In re JAMESWAY CORPORATION, et al., Debtors.

## Kathleen Barnett, et al., on Behalf of Themselves and All Others Similarly Situated, Plaintiffs,

### v.

## Jamesway Corporation, Defendant.

## Local 560, an Affiliate of the International Brotherhood of Teamsters, Edwin Stier, Chairperson of the Board of Trustees of the Teamsters Industrial Employees Pension and Welfare Funds, and The Teamsters Industrial Employees Pension and Welfare Funds, Plaintiffs,

### v.

## Jamesway Corporation, Defendant.

Bankruptcy No. 95 B 44821(JLG).

Adversary Nos. 96/8389A, 96/9039A.

United States Bankruptcy Court, S.D. New York.

June 21, 1999.

---

Kaye, Scholer, Fierman, Hays & Handler, LLP, New York City, for debtor.

John C. Lankenau & Associates, New York City, for Local 560, plaintiffs.

Schneider, Goldberger, Cohen, Finn, Solomon, Leder & Montalbano, P.C., Kenilworth, New Jersey, for Barnett, plaintiffs.

### DECISION ON MOTIONS AND CROSS–MOTIONS FOR SUMMARY JUDGMENT

JAMES L. GARRITY, Jr., Bankruptcy Judge.

In these lawsuits, plaintiffs Kathleen Barnett, et al., (collectively, the "Barnett plaintiffs"), and Local 560, as an affiliate of the International Brotherhood of Teamsters, Edwin Stier, Chairperson of the Board of Trustees of the Teamsters Industrial Employees Pension and Welfare Funds, and the Teamsters Industrial Employees Pension and Welfare Funds, on behalf of members of Local 560 (collectively, the "Union plaintiffs", and together with the Barnett plaintiffs, the "plaintiffs") are suing Jamesway Corporation ("Jamesway") to recover damages occasioned by Jamesway's alleged violations of the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq. ("WARN" or the "Act"). The Barnett plaintiffs seek

summary judgment on their complaint. Jamesway opposes that motion and cross-moves for summary judgment dismissing the complaint. Jamesway moves for summary judgment dismissing the Union plaintiffs' complaint. They oppose that motion and cross-move for summary judgment on the complaint. On the consent of the parties, we consolidated the motions because they involve many of the same legal and factual issues.

We grant the plaintiffs summary judgment on their complaints. We deny Jamesway's motions.

### Facts

On or about February 1, 1995, Jamesway successfully reorganized under chapter 11 of the Bankruptcy Code. Nonetheless, on or about October 18, 1995, Jamesway and certain affiliates sought chapter 11 protection in this court. They remained in possession and control of their businesses and assets as debtors in possession until on or about June 6, 1997, when they confirmed their Amended Joint Liquidating Plan of Reorganization, dated April 15, 1997.

On October 12, 1995, Jamesway conducted business in approximately 90 store locations, and maintained its corporate headquarters in Secaucus, New Jersey, and a distribution center in Cranbury, New Jersey. As of that date, it employed more than 550 full-time employees between its corporate headquarters and distribution center.

During the period of October 12 through November 11, 1995, Jamesway fired a total of approximately 260 non-union employees of its corporate headquarters, 45 non-union employees of its distribution center, 240 union employees of its distribution center and four union employees of its corporate headquarters. The plaintiffs are among the employees that Jamesway fired during that period. In their respective complaints, they allege that Jamesway violated the Act when it fired them because it failed to give them advanced notice of their terminations. They maintain that Jamesway is liable to them in an amount equal to the sum of (a) unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay and pension and 401(k) contributions for 60 calendar days, (b) the cost of health and medical insurance and other fringe benefits under ERISA for 60 calendar days, (c) any medical or other expenses incurred during the 60 calendar days since their respective terminations that would have been covered and paid under Jamesway's employee benefit plans had that coverage continued during that period, (d) interest on the above amounts and (e) reasonable attorneys' fees. Moreover, the Union plaintiffs contend that their claims are entitled to administrative priority status under the Bankruptcy Code.

In its answers to the complaints, Jamesway denies liability and asserts various affirmative defenses. For various reasons, certain of those defenses are irrelevant to the motions. We consider the relevant defenses in conjunction with these motions.

### Discussion

We base our subject matter jurisdiction of this adversary proceeding on 28 U.S.C. §§ 1334(b) and 157(a) and the July 10, 1984 Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (Ward, Acting C.J.). This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A), (B) and (O); *see also Oil, Chemical & Atomic Workers AFL–CIO–CLC v. Hanlin Group, Inc. (In re Hanlin Group, Inc.)*, 185 B.R. 703, 704–05 (Bankr. D.N.J.1995) (*"In re Hanlin, II"*).

Fed.R.Bankr.P. 7056 makes Fed. R.Civ.P. 56 applicable herein. In relevant part, that rule states that summary judgment:

shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any mate-

rial fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 56(c)); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (same). In assessing the merits of this motion, we view the record in the light most favorable to the non-moving party. *See National Union Fire Ins. Co. v. Turtur,* 892 F.2d 199, 203 (2d Cir.1989); *Leberman v. John Blair & Co.,* .880 F.2d 1555, 1559 (2d Cir. 1989); *Lund's Inc. v. Chemical Bank,* 870 F.2d 840, 844 (2d Cir.1989). We must determine "[w]hether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 251–52, 106 S.Ct. 2505. The movant initially must prove that there are no material facts in dispute. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Heyman v. Commerce & Industry Ins. Co.,* 524 F.2d 1317, 1319 (2d Cir.1975). Thereafter, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.,* 477 U.S. at 250, 106 S.Ct. 2505 (quoting Fed.R.Civ.P. 56(e)).

Ultimately, the non-moving party must demonstrate that some evidence exists which would create a genuine issue of material fact. *See Delaware & Hudson Ry. v. Consolidated Rail Corp.,* 902 F.2d 174, 177–78 (2d Cir.1990). "Conclusory allegations will not suffice to create a genuine issue." *Id.* (quoting *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505).

> The fact that both sides have moved for summary judgment does not mean that [we] must grant judgment as a matter of law for one side or the other. Rather, [we] must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration

*Schwabenbauer v. Board of Educ.,* 667 F.2d 305, 313–14 (2d Cir.1981); *see also Heublein, Inc. v. United States,* 996 F.2d 1455, 1460 (2d Cir.1993) (same). As we will discuss, the relevant and material facts are not in dispute. Accordingly, these matters are ripe for summary judgment.

 The Act protects workers from plant closings and mass layoffs without notice. *See Grimmer v. Lord Day & Lord,* 937 F.Supp. 255, 256 (S.D.N.Y.1996) ("*Grimmer*")[1]; *see also* 20 C.F.R. § 639.1(a).[2] In relevant part, it states that

---

1. Throughout this memorandum, and as relevant, we cite to *Grimmer,* 937 F.Supp. 255. We do so because we are persuaded that the court's holdings therein are correct and relevant to the issues that we address herein, not because, as the Union plaintiffs contend, we are bound by principals of stare decisis to follow it. We do not read *United States v. Whiting Pools, Inc.,* 674 F.2d 144 (2d Cir. 1982) (cited by the Union plaintiffs), to hold otherwise. Rather, as relevant, that court, in recounting the procedural history of the case on appeal, only noted that the bankruptcy court believed itself bound by a district court decision with which it disagreed. *See id.* at 147. It did not consider the issue. We find that where the bankruptcy court sits in a multi-judge district, it is not bound by principles of stare decisis by the decision of a district judge in that district. *See First of America Bank v. Gaylor (In re Gaylor),* 123 B.R. 236, 241–43 (Bankr.E.D.Mich.1991); *In re Ei-*

land, 170 B.R. 370, 378 (Bankr.N.D.Ill.1994); *In re Finley, Kumble, Wagner, Heine, et al.,* 160 B.R. 882, 898 (Bankr.S.D.N.Y.1993); *Pereira v. Centel Corp. (In re Argo Communications Corp.),* 134 B.R. 776, 786 n. 9 (Bankr. S.D.N.Y.1991); *First of America Bank v. Gaylor (In re Gaylor),* 123 B.R. 236, 241–242 (Bankr.E.D.Mich.1991); *but see Irr Supply Centers, Inc. v. Phipps (In re Phipps),* 217 B.R. 427, 430 (Bankr.W.D.N.Y.1998) (bankruptcy judge bound by district court decision in multi-judge district).

2. Section 639.1(a) of the Regulations describes WARN's purpose as

provid[ing] workers and their families some of the transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs, and, if necessary, to enter skill training or retraining that will allow these workers to successfully complete in the job market.

[a]n employer shall not order a plant closing or mass layoff until the end of a 60–day period after the employer serves written notice of such an order—

(1) to each representative of the affected employees as of the time of the notice or, if there is no such representative at that time, to each affected employee[.]

29 U.S.C. § 2102(a)(1). The Department of Labor has prescribed regulations to implement the Act. *See* 29 U.S.C. § 2107(a). They have the force and effect of law. *See Carpenters Dist. Council v. Dillard Dept. Stores, Inc.,* 778 F.Supp. 297, 307 n. 12 (E.D.La.1991), *aff'd,* 15 F.3d 1275 (5th Cir. 1994), *cert. denied,* 513 U.S. 1126, 115 S.Ct. 933, 130 L.Ed.2d 879 (1995); *Finkler v. Elsinore Shore Assoc.,* 781 F.Supp. 1060, 1064 (D.N.J.1992). Among other things, they prescribe when an employer must give WARN notice, *see* 20 C.F.R. §§ 639.5, 639.9, who the employer must notify, *see id.* § 639.6, how the employer must give notice, *see id.* § 639.8, and what information the notice must contain. *See id.* § 639.7. The statute provides that an employer who fails to give WARN notice shall be liable to each aggrieved employee who suffers an employment loss as a result of such plant closing or mass layoff for, among other things, back pay for each day during the period of the violation. *See* 29 U.S.C. § 2104(a). It also states that the employer's liability "shall be calculated for the period of the violation, up to a maximum of 60 days, but in no event for more than one-half the number of days the em-

ployee was employed by the employer." *Id.*

The parties agree that for purposes of § 2102(a)(1) of the Act, Jamesway is an "employer," the plaintiffs are "affected employees," at all relevant times the Union plaintiffs had a "representative," and the Barnett plaintiffs did not, and on October 12, 1995, Jamesway ordered either a "plant closing" or "mass layoff" (although the parties dispute the proper characterization of Jamesway's actions). They also agree that Jamesway failed to provide any plaintiff with 60 days' notice of his/her termination.

■ Jamesway contends that because it ceased operating due to "not reasonably foreseeable business circumstances" and/or because it was a "faltering company," *see* 29 U.S.C. §§ 2102(b)(1), 2102(b)(2)(A), it did not have to give WARN notice to the plaintiffs [3]—although it contends that it gave them as much notice as was practicable—and is therefore not liable to them under the Act. It also asserts that it is exempt from the Act because it became a "liquidating fiduciary" on October 18, 1995, when it filed its chapter 11 case. Finally, Jamesway maintains, for a host of reasons we will discuss, that if it violated the Act, we should not impose the maximum liability under the Act. The plaintiffs vigorously dispute those assertions.

Jamesway concedes that, before acting, it did not give WARN notice to the Barnett plaintiffs that it fired between October 12 and October 18, 1995. It contends that it gave timely WARN notice to the

20 C.F.R. § 639.1(a).

**3.** If an employer can prove that it shut down its operations due to "not reasonably foreseeable business circumstances" and/or because it was a "faltering company," it is excepted from WARN's 60–day notice provisions, as follows:

(1) An employer may order the shutdown of a single site of employment before the conclusion of the 60–day period if as of the time that notice would have been required the employer was actively seeking capital or business which, if obtained, would have enabled the employer to avoid or postpone the

shutdown and the employer reasonably and in good faith believed that giving the notice required would have precluded the employer from obtaining the needed capital or business.

(2)(A) An employer may order a plant closing or mass layoff before the conclusion of the 60–day period if the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required.

29 U.S.C. § 2102(b)(1), (2)(A).

Barnett plaintiffs that it fired after October 18 by having security guards at its corporate headquarters distribute WARN notices to them and post copies of those notices in various public locations at its headquarters, all on the day that it terminated them. However, Jamesway adduced no evidence proving that the security guards either posted WARN notices at its corporate headquarters or disseminated them to any of the Barnett plaintiffs. Likewise, it adduced no evidence that any of the Barnett plaintiffs received a copy of that purported notice, and at least two former employees deny receiving it. Finally, Jamesway failed to provide us with a copy of that alleged WARN notice, and did not even attempt to prove its contents. We conclude that Jamesway failed to give WARN notice to any of the Barnett plaintiffs prior to terminating them.[4]

The undisputed facts show that (i) on or about October 27, 1995, Jamesway sent a letter and check to each non-union employee that it terminated on or after October 12 for the full amount due each employee (up to $4,000) for accrued vacation, severance and medical reimbursement expenses;[5] (ii) on or about November 17, 1995, Jamesway sent another letter to all those employees outlining it's procedures for paying mitigated severance to those employees who had not yet found jobs;[6]

4. The regulations direct that WARN notice be served pursuant to "[a]ny reasonable method of delivery," *see* 20 C.F.R. § 639.8, provided that the selected method is "designed to insure receipt of notice [at] least 60 days before separation ... (e.g., first class mail, personal delivery with optional signed receipt)...." *Id.* The Barnett plaintiffs contend that even assuming, *arguendo*, that the security guards posted and/or disseminated notices as Jamesway contends, we must grant them judgment on their complaint because those actions do not satisfy the service requirements under the Act. Jamesway disputes those assertions. We need not resolve them, given Jamesway's failure to prove that the security guards at the corporate headquarters posted or otherwise disseminated notices that complied with the Act to the plaintiffs.

5. The October 27 cover letter is addressed to "Former Associates" and is signed by Herbert Douglas, as President–Chief Executive Officer of Jamesway. It states, as follows:

As you may be aware, [Jamesway] filed for protection under Chapter 11 of the United States Bankruptcy Code on October 18, 1995. On that date, Jamesway was successful in obtaining Bankruptcy Court authorization to pay up to $4,000 to each terminated employee for pre-filing date severance, vacation pay and medical claims. The amount of the enclosed check represents the amount to which you are entitled, at this time, pursuant to the Bankruptcy Court's Order. No portion of mitigated severance has been included in this check. In the event that you do not find employment and, therefore, you become entitled to a portion of your mitigated severance, then you will be eligible to receive additional amounts up to the $4,000 aggregate limit.

Any amounts which you claim may be owed to you above the $4,000 limit cannot be paid to you at this time. You will have a claim for such amounts in the Chapter 11 proceeding. You will be receiving additional correspondence concerning the conversion of mitigated severance to non-mitigated severance in the near future.

If you have any questions concerning this payment, you may contact the Human Resources Department at (201) 330–6384.

(Carl Muller Declaration in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of Defendant's Cross Motion for Summary Judgment Ex. B.) ("Muller Declaration")

6. The November 17 letter is addressed to "Former Associates" and is signed by Carl R. Muller, Vice President/Counsel. It states as follows:

The Jamesway Severance Policy provides that a certain portion of your severance is subject to the Offset Provision (mitigation). This means your right to receive severance ends if you secure employment during the time in which your are eligible to receive severance. For example, if you are entitled to receive eight (8) weeks mitigated severance and you secure employment after six (6) weeks, you would not be entitled to receive the remaining two (2) weeks of severance. (However, if your new job pays you less than what you were earning at Jamesway, then for two (2) weeks your would be entitled to the difference between your new salary and your salary at Jamesway.)

In order for the Company to determine your severance entitlement it will be necessary to certify to the Company, on a weekly

and (iii) that in December 1995, it sent correspondence to those employees concerning the status of Jamesway's medical and pension plans. (Hereinafter, we refer to the foregoing as the "Correspondence"). Jamesway contends that by sending the Correspondence to the Barnett plaintiffs, it gave them "after the fact" WARN notice which bars any claim against it under the Act.

■■■■ There is no merit to that assertion, even assuming, *arguendo*, that the "not reasonably foreseeable business circumstances" or "faltering company" exceptions to the Act are applicable. The statute and regulations are clear that an employer can give affected employees "after the fact" notice of a plant closing or mass layoff only when a "natural disaster" causes it. *See* 29 U.S.C. § 2102(b)(2)(B); 20 C.F.R. § 639.9(c)(3).[7] Jamesway admits that a natural disaster did not cause it to cease operating. Thus, we find that the Correspondence is irrelevant in determining whether Jamesway provided the

Barnett plaintiffs with WARN notice. Moreover, even assuming, *arguendo*, that Jamesway could establish a right to give the Barnett plaintiffs "after the fact" notice that it had ceased operations, it would not escape WARN liability because, as we explain below, the Correspondence does not satisfy the Act's notice requirements.

Section 2102(b) of the Act mandates that an employer invoking either the "not reasonably foreseeable business circumstances" or "faltering company" exception to WARN provide its employees with "as much notice [of the plant closing or mass layoff] as is practicable", and in doing so, "give a brief statement of the basis for reducing the notification period." *See* 29 U.S.C. § 2102(b)(3). This means that,

> [t]he employer must, at the time notice actually is given, provide a brief statement of the reason for reducing the notice period, in addition to the other elements set out in § 639.7.

20 C.F.R. § 639.9; *see also id.* § 639.2.[8] Thus, when an employer ceases operating

---

basis, that you have not secured employment. You can do this by sending us a copy of your unemployment check. If you have secured employment at a lower salary you must let us know your new salary so that we may calculate the amount to which you may be entitled. A copy of your pay stub form your new employer will be the only satisfactory evidence. If the Company does not receive the certification from you, Jamesway will assume that you have secured employment and your right to receive severance will end.

Please remember that no former employee can receive over $4,000 at this time pursuant to the Order of the Bankruptcy Court. If your are entitled to additional amounts you may have a claim in the bankruptcy case.

If you have not secured employment from the date of your termination through November 17, 1995 please provide us with a copy of your unemployment check attention Severance Department. If you have found a job, please indicate the date on which you became employed and your salary, if you are due money from Jamesway. Thereafter, if you have not found employment send in additional copies of your unemployment check on the earlier of: every week, the end

of your severance period or when you find employment.

If you have any questions, please contact the Human Resources Department at (201) 330–6384.

(Muller Declaration Ex. D.)

7. Section 2102(b)(2)(B) states that

> No notice under [WARN] shall be required if the plant closing or mass layoff is due to any form of natural disaster, such as a flood, earthquake, or the drought currently ravaging the farmlands of the United States.

29 U.S.C. § 2102(b)(2)(B). Section 639.9(c)(3) of the Regulations explains that

> While a disaster may preclude full or any advance notice, such notice as is practicable, containing as much of the information required under § 639.7 as is available in the circumstances of the disaster still must be given, whether in advance or after the fact or an employment loss caused by a natural disaster.

20 C.F.R. § 639.9(c)(3). The regulations do not contain similar provisions for the "faltering company" and/or "not reasonably foreseeable business circumstances" exceptions to the Act.

8. Section 639.2 of the Regulations states that:

due to "not reasonably foreseeable business circumstances" or because it is a "faltering company," the employer can give less than 60 days' WARN notice, provided the notice contains certain "basic" information, *see* 20 C.F.R. § 639.7, and an explanation why the employer could not provide the full 60 days' notice. *See Local Union 7107 v. Clinchfield Coal Co.,* 124 F.3d 639, 640 (4th Cir.1997) *cert. denied* —— U.S. ——, 118 S.Ct. 1189, 140 L.Ed.2d 319 (1998); *Alarcon v. Keller Indus. Inc.,* 27 F.3d 386, 389 (9th Cir.1994) *("Alarcon ");* *Carpenters Dist. Council v. Dillard Dep't Stores,* 15 F.3d 1275, 1281 (5th Cir.1994) *("Dillard ");* *Grimmer,* 937 F.Supp. at 257; *United Paperworkers Int'l Union v. Alden Corrugated Container Corp.,* 901 F.Supp. 426 (D.Mass.1995) *("Alden ").*

Jamesway failed to provide us with a copy of its December correspondence to the Barnett plaintiffs. Thus we will not consider it in determining whether the Correspondence provides the requisite notice under WARN. The October and November letters, *see supra* notes 5 and 6 fail to meet WARN's requirement because they do not contain any of the basic information that § 639.7(d) of the Regulations mandates an employer give affected employees, like the Barnett plaintiffs, who do not have a representative.[9] *See Local 1239, Int'l Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers*

*and Helpers v. Allsteel, Inc.,* 9 F.Supp.2d 901, 908 (N.D.Ill.1998) *("Allsteel ")* (employer who gave defective WARN notice held liable under WARN even where employees were aware of the plant closing); *Siniscalchi v. Shop–Rite Supermarkets, Inc.,* 903 F.Supp. 182, 192 (D.Mass.1995) (otherwise proper notice is deficient and employer liable under WARN when notice is given two days less than the minimum 60 days' notice and neither exception for reduced notification period is applicable); *but see Saxion v. Titan–C–Manufacturing, Inc.,* 86 F.3d 553, 561 (6th Cir.1996) *("Saxion ")* (minor technical deficiency in notice is not per se violation of Act). Additionally, they do not explain, let alone address, why Jamesway failed to give the plaintiffs full 60 days' notice of their terminations. That alone is grounds for finding that the Correspondence does not provide WARN notice. *See Grimmer,* 937 F.Supp. at 257 (employer who failed to set fourth brief statement explaining why shortened notice period was necessary is liable under Act for full 60 days' damages even though notice otherwise complied with WARN). Thus, even considering the Correspondence, we find that Jamesway failed to give the Barnett plaintiffs WARN notice of their terminations.

■ Jamesway concedes that it failed to provide any notice to the four Union em-

---

WARN requires employers who are planning a plant closing or mass layoff to give affected employees at least 60 days' notice of such an employment action. While the 60–day period is the minimum for advance notice, this provision is not intended to discourage employers from voluntarily providing longer periods of advance notice. . . . WARN sets out specific exemptions and provides for a reduction in the notification period in particular circumstances.
20 C.F.R. § 639.2.

9. That section states, as follows:
Notice to each affected employee who does not have a representative is to be written in language understandable to the employees and is to contain:
(1) A statement as to whether the planned action is expected to be permanent or tem-

porary and, if the entire plant is to be closed, a statement to that effect;
(2) The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated;
(3) An indication whether or not bumping rights exist;
(4) The name and telephone number of a company official to contact for further information.
The notice may include additional information useful to the employees such as information on available dislocated worker assistance, and, if the planned action is expected to be temporary, the estimated duration, if known.
20 C.F.R. § 639.7(d).

ployees of the corporate headquarters that it fired on October 13, 1995. The evidence shows that Jamesway sent a letter dated October 12, 1995, to Mr. Peter Cranello, as President of Teamsters Local 560. That letter reads, as follows:

> Please be advised that on or about November 1, 1995, [Jamesway] will shut down its operation at its distribution center located at 66 Station Road, Cranbury, New Jersey 08512, to terminate all of its employees.
>
> We direct the enclosed notification to your office in conformance with the [Act]. We have also directed the appropriate notices to the Mayor of Cranbury, to the State Dislocated Worker Unit and to each affected non-union employee.
>
> Please be advised that we are voluntarily giving such notices, and that this letter and the attached notice is not, and should not be construed as, our admission or consent to the provisions of the WARN Act.

(Affirmation of John C. Lankenau in Support of Plaintiffs' Motion for Summary Judgment Ex. G.) The text of the "notification" that the letter mentions is, as follows:

> 1. [Jamesway] will shut down its operation located at 66 Station Road Cranbury, N.J. 08512. It is expected that such shutdown will take place on or about 1¼, 1995, at which time Jamesway shall terminate all its employees. You may direct any questions involving this action to Human Resources at (201) 330–6384.
>
> 2. The first separation from employment as a result of this action is

expected to occur on or about 10/13/1995, and all of the approximately 50 employees of Jamesway assigned to the site will be terminated on or about this date. Such termination from Jamesway is expected to be permanent.

> 3. A list of the job titles affected and the number of affected employees in each job classification may be obtained upon request.
>
> 4. No bumping rights are triggered by this action.

This notice shall not constitute, be construed or deemed a consent of Jamesway that the provisions of the WARN Act apply to the above mentioned shut down.

(*Id.*) On October 13, Jamesway fired 144 Union employees of the distribution center. The October 12 letter does not contain the requisite "basic" WARN information, *see* 20 C.F.R. § 639.7(c),[10] because it is inaccurate since it advises that Jamesway will terminate 50 employees on October 13 and Jamesway actually fired 144 of them on that date, and because it omits the name and telephone number of a company official to contact for additional information and does not identify the job titles of positions to be affected and the names of the workers currently holding the affected jobs. Although the notice states that Jamesway would provide a list of job titles affected by the shut down and the number of affected employees in each job classification, Jamesway apparently never

**10.** That regulation states, as follows:

> Notice to each representative of affective employees is to contain:
> (1) The name and address of the employment site where the plant closing or mass layoff will occur, and the name and telephone number of a company official to contact for further information;
> (2) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;

> (3) The expected date of the first separation and the anticipated schedule for making separations;
> (4) The job titles of positions to be affected and the names of the workers currently holding the affected jobs.
> The notice may include additional information useful to the employees such as information on available dislocated worker assistance, and, if the planned action is expected to be temporary, the expected duration, if known.
> *Id.* § 639.7(c).

compiled such a list.[11] Even assuming, *arguendo,* that the notice contains "basic" WARN information, *cf. Kalwaytis v. Preferred Meal Sys., Inc.,* 78 F.3d 117, 121 (3rd Cir.1996) ("Flexibility in notice requirement ... is recognized by the provisions that notice is to be based on the best information available to the employer at the time the notice is served. 'It is not the intent of the regulations, that errors in the information provided in a notice that occur because events subsequently change or [ ] minor, inadvertent errors are to be the basis for finding a violation of WARN'" quoting 20 C.F.R. § 639.7(a)(4)), it is not effective WARN notice because, as with the Correspondence, Jamesway failed to address, let alone explain, why it was giving less than 60 days' notice. *See Grimmer,* 937 F.Supp. at 257.

Thus, we conclude that Jamesway failed to give WARN notice to any of the plaintiffs. Nonetheless, Jamesway denies that it is liable to them under the Act. It contends that because either the "not reasonably foreseeable business circumstances" or the "faltering business" exception to WARN applies, we can excuse its failure to give notice to the plaintiffs since it was not practicable for it to do so. However, the statute and regulations clearly provide that an employer cannot invoke either exception without giving some written WARN notice. *See* 29 U.S.C. § 2102(b)(3) (employer "shall give as much notice as is practicable and at the time shall give a brief statement of the basis for reducing the notification period."); 20 C.F.R. §§ 639.9 (speaks of "the time [WARN] notice is actually given.", 639.2 (describes the 60–day notice period in the Act as the "minimum for advance notice ..." and

speaks of "reduc[ing] ... the notification period in particular circumstances."); *see also Alarcon,* 27 F.3d 386, 388–89 (9th Cir.1994) ("When the notice period is shortened, the employer must give as much notice as is practicable, and 'at the time notice actually is given, [the employer must] provide a brief statement of the reasons for reducing the notice period, in addition to the other elements [of proper notice] set out in [20 C.F.R.] § 639.7.'" quoting 20 C.F.R. § 639.9)). Even if Jamesway could sustain its construction of the Act, we would not excuse its failure to provide the plaintiffs with notice because it could have done so on or before October 12, 1995. Jamesway admits that, at least by September 29, 1995, it considered filing for bankruptcy, (*see* Jamesway's Response to Plaintiffs' Combined 7056–1 Statement ¶ 11), and that the filing might be for the purpose of liquidation. (*See id.* ¶ 14.) It consulted its counsel, Kaye Scholer, in late September regarding its WARN liability. (*See id.* ¶ 17.) While Jamesway did not believe it would have to liquidate until late December 1995 or early January 1996, (*see id.* ¶ 14), it was aware that WARN required 60 days' notice and it considered giving early notice in October 1995 in anticipation of employee terminations. (*See* Jamesway Combined 7056–1 Statement ¶ 111.) Jamesway announced in a press release dated October 6, 1995, that, due to "continued week sales results, operating losses and increasingly constricted trade credit," it was considering filing a chapter 11 bankruptcy petition. (*See* Appendix of Exhibits to Michael Palmer's Declaration in Support of Plaintiff's Motion for Summary Judgment Ex. 2.) When, on October 12, 1995, Jamesway's management autho-

11. We infer that from the fact that Jamesway did not produce such a list in response to the Union plaintiffs' document request and has not otherwise accounted for the list. *See* Fed. R.Bankr.P. 37 (making Fed.R.Civ.P. 37 applicable in bankruptcy proceedings); Fed. R.Civ.P. 37(c)(1) ("A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed."); *see also Weeks v. ARA Services,* 869 F.Supp. 194, 195 (S.D.N.Y. 1994) ("Where relevant information ... is in the possession or control of one party and not provided, then adverse inference may be drawn that such information would be harmful to the party that fails to provide it." citing cases and Fed.R.Civ.P. 37(c)(1)).

rized the termination of plaintiffs, it ordered a script be read to terminated employees, which read in part: "[S]hould an individual inquire about the Warn Act, inform them that the company's attorneys have advised that the company has given adequate notice pursuant to that Act." (Jamesway's Response to Plaintiffs' Combined 7056–1 Statement ¶ 26); (Declaration of Michael Palmer ¶ 17 Ex. A); (Declaration of Gerald Fitzgerald ¶ 10.) Also, on or about October 12, 1995, it sent letters to the union, the Mayors of Cranbury and Secaucus, and the New Jersey Department of Labor, explicitly stating that the letters were not to be construed as an admission that it was subject to the provisions of the WARN Act, but included a statement, to the effect that the letters contained the information required under WARN. (*See* Affidavit of John Lankenau Ex. G.) The undisputed facts clearly show that Jamesway was aware of its obligations under WARN, was capable of complying with the Act's requirements, but failed to do so.

▆ Because Jamesway failed to give WARN notice to the plaintiffs, it cannot assert either the "not reasonably foreseeable business circumstances" or "faltering company" exception to the Act as a defense to liability herein. For that reason, we need not consider further whether either exception is applicable herein.

Jamesway contends that immediately subsequent to the commencement of its liquidation and shutdown, and the resultant termination of its employees, its efforts were geared towards finalizing the planning, documentation and other advance activities necessary to file its liquidating chapter 11 case so that its liquidation could proceed in an orderly manner. It contends that once it began its liquidating chapter 11 case, it was a fiduciary liquidating its failed business and did not succeed to the notice obligations of the pre-bankruptcy entity. *See* 54 Fed.Reg. 16,045 (1989) (a bankruptcy fiduciary whose sole function is to liquidate a failed

business for the benefit of creditors does not succeed to the former employer's WARN obligations); *see also Bailey v. Jamesway (In re Jamesway Corp.),* 1997 WL 327105, *12, Ch. 11 Case No. 95 B 44821, Adv. No. 96/8389A (Bankr.S.D.N.Y. June 12, 1997) ("liquidating fiduciaries need not provide notice to terminated employees under the WARN Act."). For this additional reason, Jamesway contends that we must dismiss the complaint. The plaintiffs deny that Jamesway is a liquidating fiduciary because it continued its normal business operations until at least November 3, 1995, when it conducted going out of business sales at its store locations. As noted, Jamesway disputes that contention. We need not resolve that dispute, because assuming, *arguendo*, that Jamesway was a liquidating fiduciary as of October 18, 1995, it nevertheless is liable under WARN to the plaintiffs.

▆ Jamesway concedes that on October 12, 1995, its directors voted to liquidate the company and authorized Jamesway to file a liquidating chapter 11 case. It also admits that when it fired the Barnett plaintiffs on October 12, it did so in furtherance of its liquidation, and that as of that day, it had identified all the plaintiffs as employees that would lose their jobs in the ensuing liquidation, and formulated a schedule for firing them. Under WARN, an employer must give written notice of a plant closing or mass layoff to "affected employees". *See* 29 U.S.C. § 2102(a)(1). Those are "employee[s] who may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing or mass layoff by their employer." *Id.* U.S.C. § 2101(a)(5); *see also* 20 C.F.R. § 639.6(b) ("Notice is required to be given to employees who may reasonably be expected to experience employment loss".) As of October 12, the plaintiffs plainly were "affected employees" entitled to WARN notice. When Jamesway failed to serve them with such notice, it became liable to them under the Act. The subsequent filing of the bank-

ruptcy petition did not divest it of its obligations under WARN to those employees.

■ Jamesway also contends that we must dismiss the complaint because in terminating the plaintiffs it acted in good faith with reasonable grounds for believing that it was not violating the Act. *See* 29 U.S.C. § 2104(a)(4).[12] However, even if applicable, that exception does not provide a defense to liability under the Act. *See Grimmer*, 937 F.Supp. at 258 ("this [good faith] defense does not provide a basis for denying this motion.").

■ We conclude that the plaintiffs are entitled to summary judgment on their complaints because Jamesway violated the Act by terminating them without notice.[13] As noted, an employer who violates the Act is "liable to each [plaintiff] ... for ... back pay for each day of violation[,]" 29 U.S.C. § 2104(a)(1), and "[s]uch liability shall be calculated for the period of the violation up to a maximum of 60 days...." *Id.* Jamesway argues that because it violated the Act, if at all, on October 12, and because it can prove that it ceased operating due to "not reasonably foreseeable business circumstances" or because it was a "faltering company," the relevant period for calculating damages against it is not 60 days, but rather, is from October 12 through the date that it fired the particular employee. However, the exceptions are relevant only in determining whether the employer gave adequate notice under WARN. *See* 29 U.S.C. § 2102(b) (entitled "Reduction of notification period"). They do not bear on the calculation of damages under the Act. Rather, § 2104 is relevant in that regard. In any event, and as noted, neither exception is applicable because Jamesway failed to give the plaintiffs no-

tice under WARN. Section 2104(a) is a liquidated damage provision "designed to penalize the wrongdoing employer, deter future violations, and facilitate simplified damage proceedings." S.Rep. No. 100–62, 1st Sess. 2 (1987). The mitigation provisions of § 2104(a)(4) provide the only exception to the rules regarding the calculation of damages in § 2104(a)(2). As we will explain below, those provisions do not apply in this case. Accordingly, having determined that Jamesway violated the Act, we find that it is liable for damages calculated over a 60–day period. *See Ciarlante v. Brown & Williamson Tobacco Corp.*, 143 F.3d 139, 150 (3rd Cir.1998) (explaining that "where there was no [notice] prior to the plant closing or mass layoff, ... an employer [is] liable for an award covering the full 60–day period specified as a maximum violation period in the statute, rather than a shorter period." citing *United Steelworkers v. North Star Steel Co., Inc.*, 5 F.3d 39, 42–43 (3d Cir. 1993) ("*North Star Steel*"); 29 U.S.C. § 2104(a)(1)).

■ The plaintiffs urge us to adopt a "calendar day" approach and assess damages against Jamesway equal to 60 times each employee's daily wage. Jamesway disputes that position and contends that we must determine the number of "work days" for each employee during the 60–day period and multiply that number by the employee's daily wage. In *North Star Steel*, 5 F.3d 39, the court adopted a "calendar day" approach in calculating damages under the Act. *See id.* at 43. Since then, however, the Circuit Courts of Appeal that have considered the issue uniformly have adopted the "work day" approach and ruled that damages for failure

---

**12.** That section states, as follows:
 If an employer which has violated this chapter proves to the satisfaction of the court that the act or omission that violated this chapter was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of this chapter, the court may, in its discretion, reduce the amount of the

liability or penalty provided for in this chapter.
29 U.S.C. § 2104(a)(4).

**13.** In conjunction with these motions, the parties asked us to make certain evidentiary rulings. Given our decision, we need not, and will not, address those matters.

to give WARN notice should be calculated using the number of work days within the violation period. *See Burns v. Stone Forest Indus., Inc.*, 147 F.3d 1182, 1182 (9th Cir.1998) *cert. denied* —— U.S. ——, 119 S.Ct. 591, 142 L.Ed.2d 533 (1998); *Breedlove v. Earthgrains Baking Co's., Inc.*, 140 F.3d 797, 801 (8th Cir.1998) *cert. denied* —— U.S. ——, 119 S.Ct. 276, 142 L.Ed.2d 228 (1998); *Saxion*, 86 F.3d at 558–561; *Frymire v. Ampex Corp.*, 61 F.3d 757, 771–772 (10th Cir.1995) ("*Frymire*"); *Dillard*, 15 F.3d at 1282–1286. Like those courts, we adopt the *Dillard* court's reasoning in utilizing a "work day" approach to calculate the WARN damages. We do so because that methodology accords the term "back pay" its common meaning, *see Dillard*, 15 F.3d at 1283, it is faithful to the intent of the draftsmen as reflected in the statute's legislative history, *see id.* at 1284, and it ensures an equitable distribution of damages among employees. *See id.* at 1285. Thus, each plaintiff is entitled to damages equal to his or her's daily wage times the number of work days in the 60–day period following October 12, 1995.

■ It is undisputed that Jamesway paid each plaintiff through the date of his or her termination. In part, the Act states that "[t]he amount for which an employer is liable [under the Act] ... shall be reduced by—(A) any wages paid by the employer for the period of the violation...." 29 U.S.C. § 2104(a)(2)(A). Jamesway is correct that, pursuant to that section, it can set off its liability to each plaintiff by the amount of wages, if any, that it paid the plaintiff after October 12, 1995.

■ However, we disagree with Jamesway that we should further reduce

the plaintiffs' damages pursuant to § 2104(a)(4) of the Act. As noted, under that section, we may reduce Jamesway's liability if it "proves to [our] satisfaction ... that the act or omission that violated [the Act] was in good faith and that [it] had reasonable grounds for believing that the act or omission was not a violation of [the Act]...." 29 U.S.C. § 2104(a)(4). We narrowly construe this mitigation defense. *See Washington v. Aircap Indus., Inc.*, 860 F.Supp. 307, 315 (D.S.C.1994) ("*Aircap*"). Jamesway bears the burden of proving that it can benefit from the defense. *See id.* Courts considering this defense "interpret[ ] it to require proof of the employer's subjective intent to comply with the Act, as well as evidence of objective reasonableness in the employer's application of the Act." *Frymire*, 61 F.3d at 767–68; *see Saxion*, 86 F.3d at 561; *Alden*, 901 F.Supp. at 443. "Good faith is a variant of intent, and summary judgment on issues of intent is rare, but not wholly non-existent." *Oil Chemical and Atomic Workers Int'l Union, Local 7–515, AFL–CIO v. American Home Products Corp.*, 790 F.Supp. 1441, 1451 (N.D.Ind.1992). Thus, courts have found that issues under § 2104(a)(4) may be appropriately decided on summary judgment. *See id.* (citing *United Auto., Aerospace & Agric. Implement of America, Local 1077 v. Shadyside Stamping Corp.*, 1991 WL 340191, No. C–2–89–0429 (S.D.Ohio 1991).)

■ Jamesway contends that it relied in good faith on the advice of its counsel in determining that its acts satisfied its WARN notice obligations. It has adduced no evidence, however, to prove to that it had a good faith belief that the Correspondence and letter to the Union satisfied those obligations.[14] *See Frymire,*

---

14. Jamesway contends that it can base its good faith defense on counsel's advice notwithstanding the fact that it asserted the attorney-client privilege with respect to most communications regarding its WARN liability and has not put those communications into evidence. Jamesway bases this contention on the fact that plaintiffs failed to move pursuant

to Fed.R.Civ.P. 37(a)(2)(B), to force disclosure of those communications, and we did not order disclosure. Such contentions are to no avail. The Act clearly places the burden on Jamesway to prove its good faith. *See* 29 U.S.C. § 2104(a)(4); *Aircap*, 860 F.Supp. at 315. It is settled that summary judgment is appropriate where "the nonmoving party has

61 F.3d at 767–68; *Saxion,* 86 F.3d at 561; *Alden,* 901 F.Supp. at 443. Moreover, the circumstantial evidence supports the conclusion that Jamesway did not have a subjective belief that it was in compliance with the Act. As we have determined, Jamesway was aware of its WARN notice obligations prior to it terminating any of the plaintiffs, and it was capable of providing WARN notice but failed to do so. Further, while Jamesway claims that, "once [it] filed its chapter 11 petition for purposes of liquidation on October 18, [1995] it was [its] understanding that there were no ongoing obligations to give notice under WARN[,]" (Declaration of Carl Muller ¶ 10), it provides no basis for that understanding or whether this understanding of the liquidating fiduciary exception played any part in Jamesway's decision to forego providing WARN notice to employees terminated postpetition. "Good faith requires an honest intent to ascertain the requirements of the statute and to act accordingly." *Aircap,* 860 F.Supp. 307, 315–16 (D.S.C.1994); *see Dillard,* 15 F.3d at 1287–88 (finding that lower court did not err in finding employer did not act in good faith when it was aware of Act's notice requirements, but "consistently resolved any questionable [notice] issue in its favor."); *Alden,* 901 F.Supp. 426, 443 (D.Mass.1995) (finding that employer did not act in good faith when it relied on simplistic legal advise in the face of WARN's complex statutory requirements); *Aircap,* 860 F.Supp. 307, (D.S.C.1994) (same); *see also Allsteel, Inc., I,* 955 F.Supp. 78, 81 (N.D.Ill.1996) (good faith intent to comply with Act requires requisite notice not wait until plant closing or mass layoff is likely but instead employer must give notice when the plant closing or mass layoff is foreseeable). We find that the circumstantial evidence clearly shows that Jamesway was aware of its obligations under the Act yet made no good faith effort to comply with it.[15] *See Citizens Bank v. Hunt,* 927 F.2d 707, 711 (2d Cir.1991) (" '[T]he mere incantation of intent or state of mind [does not] operate as a talisman to defeat an otherwise valid [summary judgment] motion .... where solid circumstantial evidence exist to prove plaintiff's case.' " quoting *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985); *Clements v. County of Nassau,* 835 F.2d 1000, 1005 (2d Cir.1987)); *Corrugated Paper Products, Inc. v. Longview Fibre Co.,* 868 F.2d 908, 914 (7th Cir.1989) (summary judgment may be granted to movant on issues of state of mind where "the burden is on the nonmovant to establish the state of mind and the nonmovant has failed to come forward with even circumstantial evidence from which a jury could reasonably confer the relevant state of mind.").

▆ Even assuming, *arguendo,* that Jamesway's counsel advised it that the

---

failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548; *see also Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 ("[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.") (citations omitted); *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985) ("A party opposing a motion for summary judgment simply cannot make a secret of his evidence until trial, for in doing so he risks the possibility that there will be no trial." quoting *Donnelly v. Guion,* 467 F.2d 290, 293 (2d Cir.1972)).

15. Jamesway also argues that in determining whether it acted in good faith, we should consider the assistance it provided its terminated employees after it filed for bankruptcy. However, Jamesway's post-termination conduct has no bearing on whether it possessed a good faith belief that its acts satisfied its WARN notice obligations at the time notice was required to be given. *See Jones v. Kayser–Roth Hosiery, Inc.,* 748 F.Supp. 1276, 1291 (E.D.Tenn.1990) (employer's conduct after the employee terminations had taken place deemed irrelevant in the context of determining whether employer was entitled to good faith reduction in WARN damages); *Aircap,* 860 F.Supp. at 315 ("the WARN Act's good faith mitigation provision has been interpreted narrowly to require proof that the employer believed at the time of the plant closing that it was giving 60 days' notice or that it fit within one of the provisions allowing shortened or no notice").

Correspondence and the letter to the Union complied with its WARN notice obligations because Jamesway qualified for the "faltering company" and/or the "not reasonably foreseeable business circumstance" exception to the Act, and Jamesway, in good faith, believed this to be true, such belief was clearly unreasonable. The statutes, regulations and case law available at the time Jamesway ordered the terminations, in no uncertain terms, stated that employers were required to provide, as soon as was practicable, basic WARN notice and a brief statement explaining why reduced notice was necessary, in order to qualify for the "not reasonably foreseeable business circumstances" or "faltering company" exception to the WARN Act. *See* 29 U.S.C. § 2102(b)(3); 20 C.F.R. § 639.9; *see, e.g., Alarcon,* 27 F.3d at 386. It was unreasonable for Jamesway to rely upon an informal opinion of counsel, to which a written opinion was not asked for or obtained, that its efforts complied with the Act, where it was facing potential WARN liability totaling millions of dollars.[16] *See Alden,* 901 F.Supp. at 443 (good faith reduction in damages denied where court concluded that employer's reliance upon counsel's simplistic and clearly incorrect legal opinion was unreasonable); *Aircap,* 860 F.Supp. at 317 (good faith reduction in damages denied where employer obtained a clearly incorrect, non-written, informal opinion from counsel several weeks after the decision to close the plant had been made, and only seven days before the terminations were to occur). Thus, we will not reduce the damage award pursuant to § 2104(a)(4) of the Act.

*Oil, Chemical & Atomic Workers AFL–CIO–CLC v. Hanlin Group, Inc. (In re Hanlin Group, Inc.),* 176 B.R. 329, ("*In re Hanlin, I* ") the Union contends that we must accord administrative priority status under § 507(a)(1) of the Bankruptcy Code to the WARN claims of those plaintiffs·that Jamesway fired postpetition because those claims are akin either to unpaid postpetition wages, or damages caused by the debtor in possession. Plaintiffs bear the burden of proving that their claims are entitled to an administrative expense priority. *See Woburn Associates v. Kahn (In re Hemingway Transport, Inc.),* 954 F.2d 1, 5 (1st Cir.1992). The "actual, necessary costs and expenses of preserving the estate" are entitled to administrative priority status under the Bankruptcy Code. *See* 11 U.S.C. §§ 503(b)(1)(A),[17] 507(a)(1).[18] For an expense to qualify as a § 503(b) expense of administration, it must either benefit the estate, or arise in connection with business or activities carried on by the estate. *See, e.g., Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.,* 789 F.2d 98, 101 (2d Cir.1986) (withdrawal liability under pension plan would be considered administrative expense "only if it arises out of a transaction between the creditor and the bankrupt's trustee or debtor-in-possession and 'only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business' " quoting *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.),* 536 F.2d 950, 953 (1st Cir. 1976)). A claim arising from an injury

16. We do not conclude that failure to obtain a written opinion from counsel is a per se bar to a good faith reduction in WARN damages. We limit our holding to the facts of this case.

17. Section 503(b)(1)(A) states that
(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
(1)(A) the actual, necessary costs and expenses of preserving the estate, including

wages, salaries, or commissions for services rendered after the commencement of the case[.]
11 U.S.C. § 503(b)(1)(A).

18. Section 507(a)(1) accords a first priority to administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28.
11 U.S.C. § 507(a)(1).

that was caused while the bankrupt estate continued in operation, is entitled to administrative priority, notwithstanding the fact that there was no corresponding benefit to the estate. *See, e.g., In re B. Cohen and Sons Caterers, Inc.,* 143 B.R. 27 (E.D.Pa.1992) (customer's claim for post-petition tort injuries entitled to administrative priority); 3 *Collier on Bankruptcy* ¶ 503.06[4][iv] (15th ed.rev.1999) ("a decision to continue business operations post-petition is made to preserve the going-concern value of the estate for the benefit of prepetition creditors, and the possibility of the estate incurring damages and compensatory penalties as a result of its operations is a foreseeable risk of that decision."). We have already determined that Jamesway's obligation to give WARN notice to all plaintiffs arose on or before October 12, 1995, when it determined that it would terminate the employees. As such, the plaintiffs' damage claims are not entitled to priority under §§ 503(b)(1)(A) or 507(a)(1) of the Bankruptcy Code. In that regard, *In re Hanlin, I,* is distinguishable and is therefore inapposite.[19]

■ In appropriate cases, courts will authorize the payment of pre-judgement interest on WARN awards. *See, e.g., Dillard,* 15 F.3d at 1288; *Frymire,* 61 F.3d at 774. We will not do so here because such an award would violate § 506(b) of the Bankruptcy Code, since the WARN claim is a general unsecured claim. Under that section,

> [t]o the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or

charges provided for under the agreement under which such claim arose.

11 U.S.C. § 506(b); *see also Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 163–164, 67 S.Ct. 237, 91 L.Ed. 162 (1946) (the policy behind precluding unsecured creditors from receiving postpetition interest is to "preserve and protect" the estate for the benefit of creditors). Moreover, it would unfairly prefer the plaintiffs over other general unsecured creditors. We deny plaintiffs prejudgment interest on their claims.

■ Section 2104(a)(6) of the Act provides that in any WARN action, "the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs." 29 U.S.C. § 2104(a)(6). Section 2104(a)(6) has been interpreted as a fee shifting statute, and provides prevailing plaintiffs in WARN Act suits with reasonable attorneys' fees unless such an award would be unjust. *See North Star Steel,* 5 F.3d at 44; Jamesway has not suggested that an award of attorneys' fees would be unjust, nor do we see anything in the record that would tend to make such an award unjust. Therefore, we grant plaintiffs reasonable attorney's fees pursuant to § 2104(a)(6).

### Conclusion

We grant the plaintiffs' motions for summary judgment. We deny Jamesway's motions for summary judgment.

---

**19.** In *In re Hanlin, I,* 176 B.R. at 334–335, the court held that if the lower court was to conclude that employer-debtor violated the WARN Act when it terminated employees approximately one month after filing for bankruptcy, the terminated employees' WARN Act claims were entitled to administrative priority. The court explained that based upon

*Reading Co. v. Brown,* 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968), terminated employees were entitled to administrative priority claims because the claims arose from injuries caused "by a debtor-in-possession in its continued operation of the debtor's business. . . ." *In re Hanlin, I,* 176 B.R. at 334.